**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **JOANNA PYLE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL NO. 1:13-147** |
| **v.** | § | |
| | § | |
| **CITY OF HARLINGEN, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION & ORDER

BE IT REMEMBERED, that on March 20, 2014, the Court considered Defendants' Motion to Dismiss Claims Under Rule 12(b)(6), Dkt. Nos. 5,[1] 13, and Motion to Designate Responsible Third Party, Dkt. No. 14. Granting the motion to dismiss in part and denying it in part, the Court dismisses Plaintiff's state-law negligence claim and her Fourth Amendment claims. Applying the settled principle that all well-pleaded facts in a complaint must be accepted as true and viewed in the light most favorable to the plaintiff when deciding such a motion, the Court denies Defendants' motion to dismiss Plaintiff's claims under the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

## I.    BACKGROUND

This case arises out of an alleged police chase involving motor vehicles which began in Harlingen, Texas at approximately 2:30 a.m. on the morning of Sunday,

---

[1] Defendants' separately filed their pending motion to dismiss. Dkt. No. 13. They also incorporated the text of that motion into their Answer. *See* Dkt. No. 5 at 9–12. Because Defendants did not attach a proposed order to their answer granting the relief requested, the Court strikes that portion of their answer. *See* S.D. Tex. Civ. R. 7.1 (requiring all motions to be accompanied by proposed order).

April 3, 2011.[2]  *See* Compl. ¶ 12, Dkt. No. 1.  According to Joanna Pyle's ("Pyle") complaint, the allegations of which the Court assumes to be true for purposes of deciding the instant motion to dismiss, Zackary Rhinehart ("Rhinehart"), a Harlingen patrol officer, observed a man "acting suspiciously" in the 1700 block of Elizabeth Street in Harlingen, Texas.  *See* Compl. ¶ 12.  Pyle was apparently asleep in her apartment in San Benito, Texas at the time.  *See id*. ¶ 16.

As the suspect was getting into his car, Rhinehart attempted to apprehend him, and a car chase ensued.  *Id*. ¶ 12.  Pyle specifically alleges that "the suspect had not committed any crimes nor were any crimes reported to . . . Rhinehart," and Rhinehart lacked probable cause to apprehend the suspect.[3]  *Id*.  Rhinehart, joined by three other Harlingen patrol units, followed the suspect across Harlingen's southern border into the City of San Benito.  *See id*. ¶¶ 13–14.  "Before the chase exited Harlingen City limits, a Harlingen Police cruiser was set up to block the suspect", and San Benito officials were notified of the chase.  *Id*. ¶ 13.  Rhinehart and the other Harlingen police officers pursued the suspect into Pyle's apartment complex.  *Id*. ¶ 14.  Rhinehart initiated a so-called "pit maneuver", ramming the suspect's car.  *Id*.¶¶ 14–15.  Both cars struck Pyle's apartment.  *See id*. ¶ 16.  Pyle asserts that the impact threw her seven feet from where she slept, and she suffered physical injuries and continues to suffer emotional distress as a result.  *See id*.

Pyle names as Defendants Rhinehart; an unknown Police Supervisor; the City of Harlingen ("Harlingen" or "the City"); the Harlingen Police Department; and the City's Manager and Police Chief.  *Id*. ¶¶ 2–7.  She sues Rhinehart and the unknown supervisor in their individual and official capacities and the other individual Defendants in their official capacities only.  *See id*. ¶¶ 4–7.  In the complaint, Pyle primarily claims that Defendants, acting under color of state law,

---

[2] Defendants admit only that the individual police officer named in the complaint encountered a suspect around the stated time.  *See* Ans. ¶ 9, Dkt. No. 5.

[3] The Court's uses the same term Plaintiff uses to refer to the person Rhinehart allegedly pursued.  The Court's use of the term "suspect" should not be taken to imply any finding about the individual who was allegedly pursued or the legal basis for Rhinehart's or any other party's alleged actions.

violated her Fourth and Fourteenth Amendment rights.[4]  *See* 42 U.S.C. § 1983 (2012).  More specifically, Pyle alleges that another police-pursuit incident involving the deaths of two civilians occurred two weeks prior to the chase which is the subject of her complaint, and the City had a policy of inadequately screening, training, and supervising its police officers.  *See id*. ¶ 23.  Acknowledging the existence of the City's written police pursuit policy,[5] Pyle also avers that the City had a de facto policy of encouraging its police officers to pursue suspects "at all cost."  *Id*. ¶ 30.  Additionally, Pyle pleads that Rhinehart and the unknown supervisor violated her Fourth and Fourteenth Amendment rights because they acted "for the purpose of causing harm unrelated to the valid goal of pursuing the suspect."  *Id*. ¶ 41.  Finally, Pyle brings a negligence claim under Texas law against Rhinehart and the unknown supervisor.  *See id*. ¶¶ 43–45.  She seeks compensatory and punitive damages, a declaration "that the acts and practices described in the complaint violate the Constitution," and an injunction "restraining these violations."  *Id*. at 12.

After this case was transferred to the Brownsville Division and randomly assigned to the undersigned, *see* Dkt. No. 23 at 1, Defendants filed the motion to dismiss now before the Court, Dkt. No. 13, and motion to designate a responsible third party under Section 33.004 of the Texas Civil Practice and Remedies Code, Dkt. No. 14.  The Honorable Andrew S. Hanen issued his decision in 1:13-CV-81, *Denise Mireles, et al. v. City of Harlingen, et al* after the parties filed a response and reply.  Dkt. Nos. 16, 20.  At the parties' request, the Court granted them leave to supplement the motion and response in light of that decision, and they have done so.

---

[4] Pyle cites 42 U.S.C. § 1985 on the first page of her complaint.  Dkt. No. 1 at 1.  She does not again refer to this statute or the elements of a claim under it.

[5] Pyle's complaint does not specify what the document to which she refers says, and a copy of the policy has not been made a part of the record.

## II.   JURISDICTION

The Court has original jurisdiction over Plaintiff's claims arising under 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343.  Additionally, the Court has supplemental jurisdiction of Plaintiff's Texas-law negligence claim under 28 U.S.C. § 1367.

Moreover, the Court possesses personal jurisdiction over Plaintiff and all of the Defendants that have appeared because Defendants omitted the defense of lack of personal jurisdiction from their motion to dismiss under Federal Rule of Civil Procedure 12(b).  *See* Compl. 1; M. to Dismiss 1, Dkt. No. 13 (stating motion to dismiss filed on behalf of all Defendants except unknown supervisor); FED. R. CIV. P. 12(h); *Jackson v. FIE Corp.*, 302 F.3d 515, 523 nn.19–20 (5th Cir. 2002) (citations omitted) (discussing rule that general appearance waives personal-jurisdiction defense).  However, asking whether the Court has personal jurisdiction over the fictitious supervisor named in Plaintiff's complaint, Dkt. No. 1 ¶ 7, "makes no sense" because personal jurisdiction "can only be evaluated once the identity of the defendant is ascertained."  *Lemarr v. John Doe Marshal(s) U.S. Marshals Service*, Civ. A. No. L-05-167, 2008 WL 2078159, at *7 (S.D. Tex. May 15, 2008) (Alvarez, J.) (citing *Colle v. Brazos Cnty.*, 981 F.2d 237, 243 n. 20 (5th Cir. 1993)) (discussing disfavored use of fictitious defendants in federal practice and requirement that plaintiff diligently seek to identify fictitious defendants through discovery); *see also Colle*, 981 F.2d at 243 (affirming dismissal for failure to prosecute claims against unidentified fictitious defendants after three years of discovery); *but see Taylor v. Fed. Home Loan Bank Bd.*, 661 F.Supp. 1341, 1350 (N.D. Tex. 1986) (relying on three Ninth Circuit cases to dismiss claims against fictitious defendants, inter alia, for lack of personal jurisdiction).

## III.   MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*, e.g., *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). That is, "the complaint's 'factual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes*, 624 F.3d at 210 (brackets omitted) (quoting *Twombly*, 550 U.S. at 555). The Supreme Court has opined that the well-worn maxim that a complaint must not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," first voiced in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), "has earned its retirement. It is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ." *Twombly*, 550 U.S. at 563.

When performing a Rule 12(b)(6) analysis, all well-pleaded facts in the complaint must be accepted as true, and the complaint must be construed in the light most favorable to the plaintiff. *S.E.C. v. Cuban*, 620 F.3d 551, 553 (5th Cir. 2010); *In re Great Lakes*, 624 F.3d at 210 (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). However, "conclusory allegations, unwarranted factual inferences, [and] legal conclusions" need not be accepted as true. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); accord *Iqbal*, 556 U.S. at 662; *In re Great Lakes*, 624 F.3d at 210.

## IV.   ANALYSIS

Defendants raise three issues in their motion to dismiss. First, they argue that the Police Department is not amenable to suit separate from the City under Texas law. Second, Defendants seek dismissal of Plaintiff's negligence claims against Rhinehart and the unknown supervisor under the election-of-remedies provision of the Texas Tort Claims Act ("TTCA"), TEX. CIV. PRAC. & REM. CODE § 101.106(e) – (f). Finally, Defendants argue that Plaintiff's fails to allege adequately that her constitutional rights were violated. The Court considers each of these arguments in turn.

### A. Capacity of Police Department to be Sued

Defendants first argue that Plaintiff's complaint establishes that the Harlingen Police Department is not amenable to suit under Texas law because it is a political subdivision of the City. Plaintiff's allege that Harlingen is a Texas home rule city. Compl. ¶¶ 2–3. To decide whether a party has capacity to sue and be sued, a federal district court looks to "the law of the state in which the district court is held." FED. R. CIV. P. 17(b); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). The Texas legislature has granted Texas home-rule municipalities the authority to "provide for a police department." TEX. LOCAL GOV'T CODE ANN. § 341.003 Vernon (2005); *see also Parades v. City of Odessa, Tex.*, 128 F. Supp. 2d 1009, 1014 (W.D. Tex. 2000) (describing this Section as granting home-rule municipality the power "to organize its own police force"). As the Fifth Circuit has explained, "[l]ike a corporation, a Texas [home-rule] city is allowed to designate whether one of its own subdivisions can be sued as an independent entity. Absent this authorization, [the plaintiff's] suit no more can proceed against the police department alone than it could against the accounting department of a corporation." *Darby*, 939 F.2d at 313.

Under the heading "parties," Plaintiffs allege that "Defendant Harlingen Police Department is a division of the Municipal Corporation and home rule city duly incorporated under the law of the State of Texas *as authorized by its home rule charter*." Compl. ¶ 3 (emphasis added). Viewed in the light most favorable to Plaintiff, the emphasized language alleges that the City's charter authorizes the Police Department to sue and be sued. Defendants cite nothing in their motion to dismiss to establish the contrary, and the Court does not now have the City's charter or any other evidence before it. *See Darby*, 939 F.2d at 313–14 (reviewing charter to conclude city did not authorize suit against its police department); *Parades*, 128 F. Supp. 2d at 1014 (same). Plaintiff ultimately bears the burden of proof on this issue. *See Darby*, 939 F.2d at 314; *McGilbert v. Montgomery Cnty. Sheriff's Dept.*, Civ. A. No. H-11-3105, 2013 WL 655706, at *2 (S.D. Tex. Feb. 20, 2013) (citing *Darby* for the proposition that a plaintiff bears the burden to show that

a subdivision of a Texas municipal corporation has capacity to sue and be sued). However, Plaintiff's allegation that the City has authorized suit against its police department suffices to survive Defendants' Rule 12(b)(6) motion.[6]  *See Darby*, 939 F.2d at 313–14.

### B. Election of Remedies under Texas Tort Claims Act

Defendants invoke two subsections of the election-of-remedies provision of the Texas Tort Claims Act:

> (e) If a suit is filed under [the Texas Tort Claims Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.
> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the Texas Tort Claims Act] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106 (Vernon 2011).  Because Pyle brings her negligence claim against Rhinehart and the unknown supervisor, only subsection (f) applies.[7]

---

[6] The Honorable Andrew S. Hanen recently concluded, adopting the report and recommendation of the Honorable Ronald G. Morgan, that the Harlingen Police Department and its dispatch unit "are not juridical entities that are capable of being sued separately from the City of Harlingen."  *Mireles v. City of Harlingen*, No. 1:13-CV-81, Slip Op. at 11 (S.D. Tex. Aug. 13, 2013), adopted by order entered Sept. 13, 2013.  The plaintiff in that action alleged only that the Police Department could be served at a specified address.  *See* Compl. ¶ 3, *Mireles*, No. 1:13-CV-81 (S.D. Tex. June 4, 2013).  Unlike the complaint in the case at bar, the complaint before Judge Hanen did not include an allegation that the City's charter authorizes the Police Department to sue and be sued.  *See id.*

[7] The response to Defendants' motion to dismiss includes the following statement: "In a not-surprising move, Defendants attempt to shield the progeny of their misdeeds by saying they are immune under state law. Thankfully, this cause of action was not filed in State District court."  Dkt. No. 16 at 8.  Plaintiff's attorney-in-charge cites nothing in support of the aspersions he casts on Texas courts in the second sentence, and he does not explain further in the response.  *See id.*  The arguments in such a response properly concern only what, if any, action this Court should take based on the governing rules of law and the record before the Court in the case at bar.  CF. FED. R. CIV. P.

### 1. Subsection (e)

Contrary to Defendants' contention, Subsection (e) does not apply because, although Pyle has named the City and two of its officers as defendants, she has not "filed suit *under [the Texas Tort Claims Act]*" against those parties.  *Id.* § 101.106(e) (emphasis added).  The Texas Supreme Court has decided that "all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of § 101.106."  *Mission Consol. Indep. School Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (alteration in original) (citing *Newman v. Obersteller*, 960 S.W.2d 621, 622 (1997)) (giving Section 101.106 this construction "[b]ecause the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the [Texas] government").  Conversely, "claims brought against the government pursuant to statutory waivers of immunity that exist apart from the TTCA are not 'brought under' the TTCA"  *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 357 (Tex. 2013) (internal alterations omitted) (quoting *Garcia*, 253 S.W.3d at 659).  Consequently, for § 101.106(e) to apply, a plaintiff must seek to recover under one or more Texas common-law theories brought under the Texas Tort Claims Act against both: (1) a Texas governmental unit and (2) at least one of its employees.  *See id.*; *City of Webster v. Myers*, 360 S.W.3d 51, 58 (Tex. App.-Hous. [1st Dist.] 2011) (deciding whether § 101.106(e) applies by "determining whether [the plaintiff] asserted a common law tort claim against both the Employees and the City in his Original Petition").

Pyle's complaint leaves the first of these two predicates unsatisfied because it asserts only § 1983 claims against the City and the other defendants.  *See* Dkt. No. 1 at 6–10.  As the underlined heading above the text of paragraphs 44–45 of her

---

7(b)(1) (stating that applications for a court order must be made by motion).  The Court cautions Plaintiff's attorney that unsubstantiated, legally irrelevant statements impuning the integrity of another court have no place in a filing signed by a member of the bar of this Court and may result in the imposition of sanctions, especially where the ad hominem statements have no bearing on the questions of law or fact presented to this Court for decision.  CF. FED. R. CIV. P. 11(b).

complaint states,[8] Pyle brings her negligence claim against Rhinehart and the unknown supervisor in their official and individual capacities. *Id*. ¶¶ 43–45.   Her claims against the City and the other defendants for alleged violations of the Fourth and Fourteenth Amendment arise under a federal statute:  42 U.S.C. § 1983.   *See id*. ¶ 32.   Defendants do not suggest that a § 1983 claim is a Texas common-law claim brought under the Texas Tort Claims Act in the sense in which the Texas Supreme Court has used that legal concept to cabin § 101.106(e).   *See Garcia*, 253 S.W.3d at 658–659; *Bustos v. Martini Club Inc.*, 599 F.3d 458, 463 (5th Cir. 2010) ("[I]f a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves.").   As pled, Pyle's claims under § 1983 arise under federal law, and they do not embrace the theory that the law of the State of Texas permits Pyle to obtain the relief she seeks.   *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617, 624 (2002) (explaining, in case in which plaintiff brought state-law tort claims and § 1983 claim, that the plaintiff's "only federal claim against the State arises under 42 U.S.C. § 1983").[9]

## 2. *Subsection (f)*

Alternatively, Rhinehart seeks dismissal under Subsection (f).   In order to trigger Subsection 101.106(f), three conditions must be satisfied at the time the

---

[8] This heading reads "Plaintiff's Second Cause of Action First Against Defendants Zachary Rhinehart and Police Supervisor in Official and Individual Capacities Under Negligence." Compl. 11.

[9] In *Will v. Michigan Dept. of State Police*, 491 U.S. 59, 71 (1989), the Supreme Court held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983" and therefore neither may be sued for retrospective money damages under § 1983.   The *Will* Court's reasoning in part rests on the proposition that "[a] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id*. at 71 (*quoting Brandon v. Holt*, 469 U.S. 464, 471 (1985)).   This proposition does not aid Defendants since it says nothing about the construction of a Texas statute like the one at issue here.   Texas courts apply a similar principle. *See Franka v. Velasquez*, 332 S.W.3d 367, 382 n. 68 (Tex. 2011).   This rule does not alter the result here, however.   As explained, Plaintiff asserts only federal-law claims under § 1983 against the individual defendants other than Rhinehart and the unknown supervisor.   These cases set forth rules to be followed concerning the identity of defendants, but nothing in *Will* or *Franka* transmogrifies a § 1983 claim into a state-law tort claim brought under the Texas Tort Claims Act.

allegedly wrongful act or omission occurred: (1) "the individual defendant was an employee of a government unit;" (2) the individual's alleged act or omission "f[ell] within the scope" of the individual defendant's employment; and (3) "suit 'could have been brought against the government unit under the Tort Claims Act.'" *Tipps v. McCraw*, 945 F. Supp. 2d 761, 767, 768 (W.D. Tex. 2013) (quoting *Anderson v. Bessman*, 365 S.W.3d 119, 124 (Tex. 2011)). As to the first and second conditions, Pyle alleges that Rhinehart "at all times was employed by the City of Harlingen" and was on duty at the time of the chase. Compl. ¶ 19. She also expressly asserts that the unknown supervisor "at all times was the shift supervisor," permitting the reasonable inference that he or she was acting within the course and scope of his or her employment with the City. *Id.* ¶ 18. Thus, Pyle asserts a negligence claim against Rhinehart and the unknown supervisor that is "based on conduct within the general scope of [Rhinehart and the supervisor's] employment." Tex. Civ. Prac. & Rem. Code § 101.106(f) (Vernon 2011); *See, e.g., Tipps*, 945 F. Supp.2d at 768 (dismissing false imprisonment, malicious prosecution, and intentional infliction of emotional distress claims against two police officers under § 101.106(f) based on officers' conduct of identity-theft investigation); *Villasana v. City of San Antonio*, Civ. A. No. SA-13-CV-278-XR, 2014 WL 640965, at *13 (W.D. Tex. Feb. 18, 2014) (dismissing claims against police officer and sergeant under § 101.106(f) because no party disputed that officer and sergeant arrested plaintiff while on duty).

Defendants must also establish that Plaintiff's negligence claim could have been brought under the Texas Tort Claims Act. *See Tipps*, 945 F. Supp. 2d at 968; *Franka*, 332 S.W.3d at 375 (separately listing this requirement after considering employment status of individual defendant). The Texas Supreme Court has determined that, under § 101.106(f), "a tort claim against the government is 'under' the Act even though the Act does not waive immunity from suit" as to the particular claim. *Franka*, 332 S.W.3d at 376 (*citing Newman*, 960 S.W.2d at 622); *see also id.* at 385. Of course, Plaintiff's negligence claim sounds in tort law and therefore "could have been brought under the [Texas Tort Claims] Act" regardless of whether that Act waived sovereign immunity for that particular claim. *Id.* at 385 ("Properly

construed, section 101.106(f)'s two conditions are met in almost every negligence suit against a government employee: he acted within the general scope of his employment and suit could have been brought under the Act—that is, his claim is in tort and not under another statute that independently waives immunity."); *Tipps*, 945 F. Supp. 2d at 967 (dismissing negligence claim under § 101.106(f)); *Villasana*, 2014 WL 640965, at *13 (same).  This result obtains in part because, with the exception of ultra vires conduct of a government employee (which Pyle does not allege), "an employee sued in his official capacity has the same governmental immunity, derivatively, as his government employer." *Franka*, 332 S.W.3d at 382-83.  Furthermore in Texas, "public employees may assert official immunity 'from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority.'" *Id.* at 383.  Again, Pyle alleges that Rhinehart and the unknown supervisor at all times acted within the course and scope of their employment. *See* Compl. ¶¶ 18–19.

Having concluded that § 101.106(f) applies to Plaintiff's negligence claim, the Court finds that dismissal of that claim is the appropriate remedy.  Plaintiff did not amend her complaint to bring her tort claims against the City within the 30-day period prescribed in § 101.106(f).  "[T]he consequence of failing to substitute the government for the employee in response to an employee's subsection (f) motion to dismiss . . . is that 'suit against the employee shall be dismissed'" *Ngakoue*, 408 S.W.3d at 358.

C. **Constitutional Claims**

Defendants maintain that Pyle has not adequately alleged either a Fourth or Fourteenth Amendment violation.  The parties rightly devote much of their argument to the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833 (1997).  The Court therefore reviews that decision together with other pertinent precedent in some detail before analyzing Plaintiff's complaint.

The plaintiffs in *Lewis* brought a § 1983 claim against a sheriff's deputy who struck and killed their 16-year-old son during a high-speed chase of a motorcycle. *See id.* at 836–37.  The chase began when the deputy, who was parked in his police

car, signaled a motorcycle traveling at a high rate of speed to stop. *See id*. at 836. Instead of pulling over, the motorcycle slowed, drove around the deputy's car, and sped off. *See id*. at 836–37. The deputy made a quick turn, activated his siren and emergency lights, and gave chase. *Id*. at 837. The chase lasted some 75 seconds, and the vehicles reached speeds of nearly 100 miles per hour. *Id*. The motorcycle's passenger fell when its driver attempted a sharp left turn and the deputy's police car accidentally struck the passenger at a speed of approximately 40 miles per hour, killing him. *Id*.

### 1. Fourth Amendment

The *Lewis* Court first decided that no Fourth Amendment seizure occurred. *See id*. at 843. By its terms, the Fourth Amendment protects against unreasonable "searches and seizures." U.S. Const. Amend. IV. Pyle does not argue that a search occurred. *See Lewis*, 503 U.S. at 843 (dismissing possibility of search because "[n]o one suggests that there was a search"). Consequently, to state a claim of a Fourth Amendment violation under § 1983, Pyle must allege adequately "(1) that a seizure occurred and (2) that the seizure was unreasonable." *Akin v. Cardenas*, No. 5:12–CV–209–C ECF, 2014 WL 292387, at * 3 (N.D. Tex. Jan. 27, 2014) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)). Citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991), the *Lewis* Court explained that "a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment." 523 U.S. at 844. Instead, "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied." *Id*. (quoting *Brower*, 489 U.S. at 597). The *Lewis* Court concluded the plaintiffs' allegations failed this test because the deputy "sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit," and accidentally stopped the passenger "by crashing into him." *Id*. (*quoting Brower*, 489

U.S. at 597). Similarly, a police officer engaged in a foot pursuit does not seize a suspect by ordering her quarry to halt if the suspect does not comply, even though the officer subjectively desires the suspect to stop and submit to lawful authority. *See Hodari D.*, 499 U.S. at 626 (stating that Fourth Amendment's requirement of a seizure "does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee.").

Thus, when a motorist stops because a police officer signals him or her to pull over with flashing lights, siren, or another show of authority intentionally applied, the officer affects a seizure under the Fourth Amendment. *See, e.g., Brendlin v. California* 551 U.S. 249, 255 (2007); *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (citing *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001)) (holding police traffic stop to be seizure and analyzing whether officer had reasonable suspicion for stop under *Terry v. Ohio*, 392 U.S. 1 (1962)). The Supreme Court applied this same definition of a seizure in *Scott v. Harris*, 550 U.S. 372, 381 (2007), to hold that the police officer's "decision to terminate the car chase by ramming his bumper into [the suspect]'s vehicle constituted a 'seizure.'" Moreover, an officer seizes the driver and the passengers riding in the same vehicle in an ordinary[10] traffic stop because "any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission." *Brendlin,* 551 U.S. at 257 (rejecting argument that driver but not passenger was seized when police officer pulled over car); *accord. United States v. Powell*, 732 F.3d 361, 374 (5th Cir. 2013) (framing *Brendlin's* holding in terms of standing under the Fourth Amendment as, "when the police stop a car, passengers in the car are 'seized' under the Fourth Amendment to the same extent as a driver and thus have individual standing to challenge the stop's

---

[10] In a footnote to its opinion in *Brendlin*, the Supreme Court stressed that "the relationship between driver and passenger is not the same in a common carrier as it is in a private vehicle, and the expectations of police officers and passengers differ accordingly." *Brendlin* 551 U.S. at 262 n.6; *see also, e.g., United States v. Reyes*, 349 F.3d 219, 222—23 (5th Cir. 2003) (assuming for the sake of argument that border patrol agent's request that all passengers disembark from bus in Brownsville, Texas bus station so that agent could search passenger compartment with assistance of his canine partner affected seizure and holding seizure was reasonable).

constitutionality.").  This conclusion follows, as the Supreme Court has put it, because, "[w]hen the actions of the police do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence, there needs to be some test for telling when a seizure occurs in response to authority, and when it does not." *Brendlin* 551 U.S. at 255.  The appropriate test in such circumstances asks "if 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"  *Id.* (*quoting United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).  In a certain sense of the words, the passenger killed in *Lewis* could be described as acquiescing to the officer's authority, but the *Lewis* Court did not apply the quoted test from *Mendenhall.  See Lewis*, 523 U.S. at 247.  Hence the Supreme Court in *Lewis* implicitly concluded that the facts there involved neither an individual's passive acquiescence to government authority nor an officer's ambiguous intent to restrain for Fourth Amendment purposes.  *See Lewis*, 523 U.S. at 847; *Brendlin*, 551 U.S. at 257 (noting ambiguity of officer's intent when he or she stops a vehicle with passengers and looking to reasonable understanding of passengers to determine who is seized); *Scott*, 550 U.S. at 381 (reciting only *Brower* standard to decide whether fleeing suspect was seized when officer rammed suspect's vehicle).

With these principles in mind, the Court turns to the allegations found in Plaintiff's complaint.  Dkt. No. 1.  Pyle begins by describing the police chase before Rhinehart allegedly rammed the suspect's vehicle.  She alleges that Rhinehart and other Harlingen police officers began following the suspect's car on Elizabeth Street in Harlingen and followed it into Pyle's apartment complex in San Benito.  *See* Dkt. No. 1. at 3–4.  Under *Lewis*, the pursuit up to this point as alleged, even when viewed in the light most favorable to Plaintiff, affected no Fourth Amendment seizure since the officers "sought to stop the suspect only by the show of authority represented by . . . continuing pursuit," but the suspect did not submit to the officers' show of authority.  523 U.S. at 844 (quoting *Brower*, 489 U.S. at 597).

These allegations therefore do not state a claim of a seizure under the Fourth Amendment.

After recounting the chase from Harlingen to San Benito, the complaint states that Rhinehart "[w]ithout regard for the safety of civilians on private property . . . , continued to follow the suspect and initiated the dangerous 'pit' maneuver next to parked cars and the residential units of the apartment complex." Compl. ¶ 14. The next paragraph elaborates that "Rhinehart used his police vehicle to ram and bump the suspect, thereby causing the suspect to lose control of his vehicle and plow into the residential unit at a high rate of speed." *Id.* ¶ 15. Again viewed in the light most favorable to Pyle, these allegations evince at most that Rhinehart sought intentionally to curtail the movement of the suspect's vehicle (and thereby the suspect himself) by ramming it with his police car, and that act accidentally[11] set in motion a chain of events leading to Pyle's injuries. *See id.* That is, these allegations plead only "a governmentally caused termination of an individual's freedom of movement" which the *Lewis* Court described as insufficient with more to affect a Fourth Amendment seizure. 523 U.S. at 844 (quoting *Brower*, 489 U.S. at 597) (explaining that "the innocent passerby" may have freedom of movement terminated in this way but is not thereby seized because force brought to bear to curtail freedom is not "intentionally applied" in the legally operative sense of that phrase). Pyle does not argue to the contrary in her response. *See* Dkt. No. 10.

Instead, Pyle argues that Rhinehart had "no probable cause to initiate the chase of the suspect other than he [sic] 'looked suspicious at 2:00 a.m.'"[12] Dkt. No.

---

[11] By this, the Court means only that *Lewis's* holding dictates the resolution of the Fourth Amendment issue. Elsewhere, Pyle alleges that Defendants "acted for the purpose of causing harm." Dkt. No. 1 ¶ 41. Pyle situates this allegation outside of the Facts section of her complaint and within her first cause of action in which she specifically alleges only a Fourteenth Amendment violation. *See id.* ¶ 39. Pyle's allegations that Rhinehart rammed the suspect's vehicle while in a residential area and with parked cars nearby further support this conclusion. *See id.* ¶¶ 16–17.

[12] Plaintiff also repeatedly asserts that Rhinehart and his fellow officers violated the Harlingen Police Department's pursuit policy by following the suspect into San Benito and onto private property. *See, e.g.*, Dkt. No. 1 ¶¶ 19(d)—(f); Dkt. No. 16 at 5; Dkt. No. 28 at 2 (citing § 28 ¶ 4(a)(2)(c), (e)(1), and (f)(2)(c) of the alleged Policy). The Fifth Circuit rejected the argument that an officer who did not follow "police department protocol" by bumping a suspect during a chase in the qualified-immunity context as follows:

16 at 10 (quotation unattributed) (arguing that government officials "must have a valid reason to initiate a pursuit."). Pyle's allegation of intentional ramming of the suspect's car clearly constitutes a Fourth Amendment seizure under *Scott*.[13]  *See* 551 U.S. 381 (holding deputy who stopped fleeing suspect's vehicle by ramming its bumper affected seizure). However, Pyle does not allege that she was an occupant of the suspect's car. *See* Compl. ¶ 17. Instead, she alleges that she was asleep in her apartment at the time. *Id.*

Pyle cannot assert the suspect's Fourth Amendment rights as her own. Assuming without deciding that she has alleged a seizure of the suspect or his car, Pyle effectively advances a theory of vicarious liability for the violation of the suspect's Fourth Amendment rights. *See* Dkt. No. 30 at 10. She repeatedly stresses in her complaint and responses to the motion to dismiss that Rhinehart and the other Harlingen police officers pursued the suspect merely because he looked suspicious. *See, e.g.*, Compl. ¶¶ 12 and 42, Dkt. No. 1; Resp. to M. to Dismiss 6, 10, Dkt. No. 16. That is, she asserts that the officers' decision to pursue the suspect and Rhinehart's decision to ram the suspect's vehicle were unreasonable under the Fourth Amendment. The Court expresses no opinion on these questions because the well-settled rule that "Fourth Amendment rights . . . may not be vicariously

---

> The fact that [the officer] acted contrary to his supervisor's order is constitutionally irrelevant. Violations of non-federal laws cannot form a basis for liability under § 1983, and qualified immunity is not lost because an officer violates department protocol. *See, e.g., Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992) (finding that § 1983 does not provide a remedy if there is no violation of federal law); *Davis v. Scherer*, 468 U.S. 183, 194 (1984) (noting that officials do not lose qualified immunity where they violate administrative directives); *Scott*, 127 S.Ct. at 1773 n. 1 (observing that "it is irrelevant to our analysis whether [Officer] Scott had permission to take the precise actions he took" when he bumped the fleeing suspect off the road). Therefore, we hold that the district court erred in concluding that [the officer] loses qualified immunity because he failed to follow his supervisor's order to end the chase.

*Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009).

This reading of *Scott* and other binding Supreme Court precedent renders Plaintiff's allegations that Rhinehart and the unknown supervisor violated City policy non-actionable under the Fourth Amendment on a § 1983 claim.

[13] The complaint does not state whether Rhinehart and his fellow officers ever apprehended the suspect.

asserted" forecloses Pyle's efforts to asserting the suspect's Fourth Amendment rights.[14] *United States v. Powell*, 732 F.3d 361, 374 (5th Cir. 2013) (alteration in original) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). For example, an arcade owner has no "standing" to bring a § 1983 claim that city police officers violated her patrons' Fourth Amendment rights. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 704 (5th Cir. 1991) (per curiam) ("Because the record in this case is devoid of any evidence that [owner] was personally subjected to an illegal search or seizure, [owner] has no standing to assert the rights of third parties who may have been subjected to such searches or seizures while at [the business]." *See also Williams v. Kunze*, 806 F.2d 594, 599 (5th Cir. 1986) (citing *United States v. Britt*, 508 F.2d 1052, 1055 (5th Cir. 1975)) (applying rule, in civil action, that "[a]n individual's status as the sole shareholder of a corporation is not always sufficient to confer upon him standing to assert the corporation's fourth amendment rights"). Consistent with this rule, The Supreme Court in *Lewis* did not analyze whether the deputy seized the person operating the motorcycle or the motorcycle itself; it asked only whether the passenger who fell from it was seized. *See* 523 U.S. at 842–44. Accordingly, assuming Plaintiff's complaint adequately pleads a seizure of the suspect or his vehicle, it still does not state a claim that Plaintiff, rather than the suspect, was seized.

There being no other material factual allegations in the complaint, the Court concludes that, under *Lewis*, Plaintiff's complaint does not state a claim for a violation of her right to be free from unreasonable seizures under the Fourth Amendment for which relief can be granted. To hold that government-caused curtailment of an individual's freedom of movement, without more, constitutes a Fourth Amendment seizure ultimately risks demoting the Fourth Amendment to "a font of tort law." *Lewis*, 523 U.S. at 847 (recognizing risk in context of Due Process

---

[14] The concept of Fourth Amendment standing should not be confused with Article III standing. *See United States v. Pack*, 612 F.3d 341, 349 n.4 (5th Cir. 2010) (*citing Rakas v. Illinois*, 439 U.S. 128, 138 (1978)) (contrasting standing under Fourth Amendment with Article III standing and explaining that "the question of Fourth Amendment 'standing' is not truly a question of standing [under Article III] in the first place, but is instead an issue of the merits of [the individual]'s [Fourth Amendment] claim").

Clause).  Put another way, the "Fourth Amendment addresses 'misuse of power,' . . . not the accidental effects of otherwise lawful government conduct" *Brower*, 489 U.S. at 596.

### 2. *Substantive Due Process Claim*

The Court next considers whether Plaintiff has stated a claim for a violation of her rights guaranteed by the substantive component of the Fourteenth Amendment's Due Process Clause.  *See* U.S. Const. amend. XIV § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law").  Defendants argue that Pyle alleges at most negligent acts or omissions in her complaint which falls "categorically beneath the threshold of constitutional due process."  *Lewis*, 523 U.S. at 849 (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)) (other citation omitted).  The Court concludes that, when viewed in the light most favorable to her, Pyle's complaint plausibly alleges a set of facts that state a claim for conscience-shocking deliberate indifference actionable under the Fourteenth Amendment.

As with Plaintiff's claim under the Fourth Amendment, the Supreme Court's decision in *Lewis* supplies the analytical framework.  After concluding no Fourth Amendment seizure occurred, the *Lewis* Court held that the plaintiffs failed to show a Due Process Clause violation.  *See* 523 US. at 854–55.  Explaining that the "core" of the concept of Due Process is "intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice," the Court in *Lewis* observed that "[o]ur cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary' in the constitutional sense"  *Id*. at 845, 846 (quoting *Bank of Columbia v. Okely*, 17 U.S. 235, 244 (1819) and *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)).  Consequently, "the cognizable level of executive abuse of power [is] that which shocks the conscience."  *Id*. at 845.

Reviewing its cases defining the Due-Process rights of pretrial detainees, the Court then explained "that which may, in one setting, constitute a denial of

fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." *Id.* at 850 (quoting *Betts v. Brady*, 316 U.S. 455, 462 (1942)).  The *Lewis* Court reasoned that "[t]he very term 'deliberate indifference' implies [that] the standard is sensibly employed only when actual deliberation is practical," as in certain custodial prison situations.  *Id.* at 851 (footnote omitted) (citing *Whitley v. Albers*, 475 U.S. 312, 320 (1986).  The *Lewis* Court rejected imposition of Fourteenth Amendment liability under a lesser standard of fault akin to negligence, gross negligence, or deliberate indifference in high-speed police chases, therefore holding that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983."  *Id.* at 854; accord. *Kemp v. City of Houston*, Civ. A. No. H-10-3111, 2013 WL 4459049 at *8 (S.D. Tex. Aug. 16, 2013) (paraphrasing *Lewis*'s holding as "a shocks-the-conscience claim does not lie in high-speed chase cases where no intent to harm is shown"); *Serrato v. City of Harlingen, Tex.*, Civ. A. No. B-05-323, 2006 WL 510010 at *6 (S.D. Tex. Mar. 1, 2006) (Tagle, J.) (quoting this passage from *Lewis*).  This rule follows from the recognition that an officer like the deputy in *Lewis* who must decide whether to engage in a high-speed chase does not have "the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations."[15]  *Id.* at 853.  Applying this test to the record as interpreted by the Court of Appeals, the *Lewis* Court affirmed summary judgment in the defendant's favor because the officer's mental state supported by the record amounted to

---

[15] Amplifying its conclusion, the *Lewis* Court opined that

> [a] police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.

523 U.S. at 853.  They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made "in haste, under pressure, and frequently without the luxury of a second chance."  *Id.* (quoting *Whitley*, 475 U.S. 320).

"deliberate indifference to [the suspect]'s survival . . . equivalent to one of reckless disregard for life." *Lewis*, 523 U.S. at 854.

After setting forth the holding of *Lewis*, Defendant's entire argument in their opening motion to dismiss on this point consists of the assertion (bereft of citation) that "Plaintiff's complaint repeatedly alleges 'deliberate indifference' by Defendants, and does not allege 'an intent to harm.'" Dkt. No. 13 at 4. The Court disagrees.

Applying *Lewis*, the Court concludes that, when viewed in the light most favorable to her, Pyle's complaint plausibly pleads a set of circumstances in which sufficient actual deliberation by Harlingen police officers was practical to trigger a deliberate-indifference standard. The Fifth Circuit, "[c]onsistent with . . . *Lewis*, [has] generally required plaintiffs to demonstrate that 'the defendant state official at a minimum acted with deliberate indifference toward the plaintiff.'" *Whitley v. Hanna*, 726 F.3d 631, 651 n.2 (5th Cir. 2013) (Elrod, J., concurring in the judgment). As the *Lewis* Court first noted, "[a]s the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical." *Id.* (quoting *Lewis*, 523 U.S. at 851); *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004)) (other citations omitted); *see also Daniels v. City of Dallas*, 272 F.App'x. 321, 323 (2008) (per curiam, unpublished) (citing *Smith v. Walden*, 228 F.3d 408, Civ. A. No. 99-11198, 2000 WL 1056091, at *1 (5th Cir. Jul. 17, 2000) (analyzing claim that police officer exceeded speed limit when responding to non-emergency call under deliberate-indifference standard) (in which same analysis used for claim against police officer speeding in non—emergency situation killed member of public in traffic accident); *Kemp* 2013 WL 4459049 at *8 (rejecting *Lewis*'s intent-to-harm test when considering summary-judgment motion to decide if evidence of police use of roadblock shocks the conscience and concluding that evidence "raises [a] question of fact as to whether the officers were deliberately indifferent to the safety of the individuals who occupied the parked vehicles"); *Cutter v. Metro Fugitive Squad*, Civ. A. No. 06-1158-GKF, 2008 WL 4068188 at *18–*20 (W.D. Okla. Aug. 29, 2008) (holding plaintiff stated a claim of a Due Process violation for which relief could be

granted because officers had time to deliberate when planning fugitive apprehension operation and deciding when and if to approach vehicle under surveillance during operation).  Pyle's complaint does not say what Rhinehart was doing before he approached the suspect, but it describes the alleged events of the evening of April 3, 2011, as a chase, and the City points to nothing in the complaint supporting the inference that the suspect led police on a high-speed chase.  *See* Compl. ¶ 12, Dkt. No. 1.  Nor does the complaint state explicitly how long the chase lasted, but, when reasonable inferences are drawn in Pyle's favor, the complaint alleges that sufficient time elapsed to allow four additional Harlingen police officers to join the chase, for Rhinehart to seek and obtain his supervisor's approval to continue the chase, for San Benito officials to be contacted about the chase, and for at least one other Harlingen police officer to park a police car ahead of the suspect at the Harlingen-San Benito border as a roadblock.  *See id*. ¶¶ 12–13.  Additionally, for purposes of the instant motion, the Court accepts as true the allegation that a Harlingen police supervisor approved the chase's continuation, making plausible the inference that the supervisor had constitutionally sufficient time to deliberate about the advisability of continuing the pursuit.  *See id*. ¶ 18; *cf. also Checki v. Webb*, 785 F.2d 534, 535–36, 538 (5th Cir. 1986) (reversing dismissal of complaint arising out of high-speed chase where police initiated pursuit and chased vehicle over a total of 31 miles).

To be deliberately indifferent, "a state actor must 'know[ ] of and disregard[ ] an excessive risk to [the victim's] health or safety.'"  *Hanna*, 726 F.3d at 641 (principal opp.) (alterations in original) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 326 n. 8 (5th Cir. 2002)).  Pyle alleges that Rhinehart chose an apartment complex parking lot as the place to ram the suspect, making reasonable for motion-to-dismiss purposes the inference that he deliberately selected that location for the attempted maneuver.  *See* Compl. ¶ 14.  Rhinehart attempted a maneuver given a name in what appears to be law enforcement jargon ("pit maneuver"), and Pyle's allegation that Rhinehart "initiated the dangerous 'pit' maneuver next to parked cars and the residential units of the apartment complex"

states a plausible claim that Rhinehart consciously disregarded a known excessive risk to the safety of nearby residents.[16]  *See id*; *Hernandez*, 380 F.3d at 881 (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)) (holding inference of subjective knowledge of dangerousness can be drawn "from the fact that the risk is obvious"); *Cutter* 2008 WL 4068188 at *18–*19 (denying in part motion to dismiss because plaintiff stated claim of deliberate indifference based on police decision of when to end surveillance and approach vehicle in which suspect known to be dangerous rode).  Because Pyle adequately alleges a deliberate-indifference substantive Due Process claim under *Lewis,* the court need not analyze whether she has adequately alleged an intent to harm or worsen the suspect's legal plight.

The Supreme Court in *Lewis* did not state that it adopted an across-the-board rule applicable to all police chases no matter how long the chase lasted and how much actual deliberation in the broad Due Process sense of that term was possible.[17]  On the contrary, the *Lewis* Court pointed out that the chase lasted 75

---

[16] Pyle also alleges that another chase incident involving the Harlingen Police Department occurred approximately two weeks before the events described in her complaint.  *See* Compl. ¶ 22, Dkt. No. 1.  She attributes this knowledge to the City, *see id.* ¶ 23, but does not aver that any officers involved in the incident about which she complains knew about the earlier incident or any other such incident, and the Court expresses no view on how, if at all, such knowledge, if proven, might affect the shocks-the-conscience question.  *See Bublitz v. Cottey*, 327 F.3d 485, 491 (7th Cir. 2003) (affirming summary judgment in favor of officer in part based on insufficient evidence of deliberate indifference on part of officer who deployed spike strips in effort to terminate 20-mile police chase because, where officer received approval to deploy strips from supervisor and knew "similar tire-deflation device had been used (unsuccessfully, but without incident) earlier in the chase, and . . . [officer] had participated in another high-speed chase that had been successfully ended by the use of stop sticks, it is not reasonable to assume that [officer] knew with any certainty that his use of the [spike strip] system in this instance would have resulted in a collision impacting innocent bystanders").

[17] *See, e.g., Sitzes v. City of West Memphis Ark.*, 606 F.3d 461, 468 (8th Cir. 2010) (citing *Terrell v. Larson*, 396 F.3d 975, 978–79 (8th Cir. 2005) (considering whether sufficient time elapsed to allow deliberation by officer responding to call and affirming grant of summary judgment in favor of officer); *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1102 n.2 (10th Cir. 2009) (analyzing complaint in police-pursuit case and applying intent-to-harm standard because "we are satisfied that this complaint alleged facts showing there was not time to deliberate"); *Porter v. Osborn*, 546 F.3d 1131, 1138 (9th Cir. 2008) ("Although intentionality is relevant, intent was not central to the Court's analysis in either *Whitley* or *Lewis* as to which standard to apply. Both decisions instead turned on whether the officers had the opportunity for actual deliberation.").

seconds and the vehicles involved reached speeds of over 100 miles per hour, *see* 523 U.S. at 837–38; that the suspect's "outrageous behavior was practically instantaneous, and so was [the officer]'s instinctive response," *id.* at 855, that the "occasion call[ed] for fast action," *id.* at 853, and that the decision to pursue had "to be made in haste, under pressure, and . . . without the luxury of a second chance." *Id.* (internal quotation and citations omitted).  This Court implies nothing about the sufficiency of any evidence produced in discovery to substantiate Pyle's claims, for no such evidence is before the Court.  The Court has only Pyle's complaint before it, and the Court decides only that Pyle's complaint, when viewed through the lens of the standards applicable to a motion to dismiss, states a claim for which relief can be granted.  *See Sarrato*, 2006 WL 510010 at *7 (contrasting Rule 12(b)(6) standard with summary-judgment standard).

### D. LEAVE TO AMEND COMPLAINT

Pyle's response to the motion to dismiss includes a brief statement which arguably could be read as a request for leave to amend her complaint.  *See* Dkt. No. 16 at 8.  She does not provide a proposed amended complaint or further specify how she would amend her complaint.  *See id.*  Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend pleadings "shall be freely given when justice so requires."  "In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  Put another way, leave to amend may be denied, inter alia, "where the proposed amendment would be futile because [the amended complaint] could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)).  Pyle cites *Great*

*Plains Trust Co.* in her response, but she does not expressly request leave to amend. *See* Dkt. No. 16 at 8.

Given the disposition of the instant motion, permitting leave to amend would be an exercise in futility.  Pyle could not alter the legally operative facts in order to allege a Fourth Amendment seizure under the objective test applied in *Lewis* and *Brower*.  *See* Compl. ¶¶ 14–15.  Furthermore, permitting Pyle to amend her negligence claim against Rhinehart would be futile and would frustrate the mandatory dismissal rule of § 101.106(f).  *See Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 363 (Tex. 2013); *Mission Consol. Indep. School Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008).

In denying Pyle leave to amend, the Court observes that Rule 15(a)(2) also provides a plaintiff with the right to amend her complaint as a matter of course without leave of court within 21 days after the filing of a motion to dismiss like the instant motion.  *See* FED. R. CIV. P. 15(a)(2).  Thus, Pyle could have amended her complaint as a matter of right within 21 days after Defendants filed their motion to dismiss, but she did not avail herself of that opportunity.  Consequently, Pyle's nod to *Great Plains Trust Co.*'s one-opportunity language "rings hollow in light of her failure to amend her complaint as a matter of right and her failure to furnish the district court with a proposed amendment during the . . . months following the filing of the motion to dismiss and [this order]."  *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir. 1986)) (affirming district court's denial of leave to amend § 1983 plaintiff's complaint because plaintiff asserted sufficiency of complaint in response to motion to dismiss); *see also Great Plains Trust Co.*, 313 F.3d at 329–30 (affirming denial of leave to amend where plaintiff did not file separate motion for leave, did not raise issue on appeal, and included in reply to motion filed in district court "a narrow assertion that 'plaintiffs should be given the opportunity to amend their Complaint.'").

## V.    CONCLUSION

For the foregoing reasons, the Court **STRIKES** the portion of Defendants' Answer denominated as a motion to dismiss. Dkt. No. 5 at 9–12; and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss, Dkt. No. 13. The Court **DISMISSES WITH PREJUDICE** Pyle's negligence claim against Rhinehart and Pyle's 42 U.S.C. § 1983 claims for violations of her Fourth Amendment rights. The Court **DENIES** Defendants' motion to dismiss Pyle's 42 U.S.C. § 1983 claims for violations of her rights guaranteed by the Due Process Clause of the Fourteenth Amendment. Finally, because the Court has dismissed Plaintiff's negligence claim under Texas law, the Court **DENIES AS MOOT** Defendants' Motion to designate a responsible third party, *see* TEX. CIV. PRAC & REM. CODE § 33.004, for that claim. Dkt. No. 14.

It is so **ORDERED**.


SIGNED this 20th day of March, 2014.

Hilda Tagle
Senior United States District Judge